# Riley v. Commonwealth.

June 7, 1949.

John T. McCoy for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

Appellant was convicted of manslaughter in connection with the death of Richard McWhorter, and his punishment fixed at confinement in the State Reformatory for a period of twenty-one years. He assigns four grounds for reversal, one of which is that there was not sufficient evidence to submit the case to the jury or to support the verdict. Since this contention must be upheld we will reserve our decision in respect to the other questions raised.

On the 15th day of April, 1948, George Pigg discovered a body, later identified as that of Richard McWhorter, in a cistern on the former's property. The cistern is about twelve feet in diameter, forty feet in depth, walled with brick, and plastered on the inside. Water stood to within about thirty inches of the top which was covered with two inch planking. The cistern had been built by the Altamount Coal Company many years before and had been used by Pigg as a sinkhole or dump for a considerable period of time before the discovery of the body. The body was not in the cistern on Pigg's last previous visit to it which was about two weeks before the body was discovered. When found, the body was unclothed except for shoes and "some kind of rag on his head." No autopsy was performed on the body nor did any doctor examine it. The coroner testified that the skull of the deceased had been fractured from the top of the ear to the center of the forehead. There was a heavy fracture over the ear, and one at the top of the head running different ways, and, in the opinion of the coroner, these fractures would have been sufficient to

produce death. The deceased was under indictment in the Laurel Circuit Court, and was free on a $10,000 appearance bond. He disappeared from the home of his sister on the morning of August 17, 1947, and did not appear for his trial in the September term. Neither was he found by his uncle, a surety on his bail bond, although the latter made a search for him and offered a reward for his apprehension. However Pigg testified that he saw the deceased six or eight weeks before his body was found. A Mr. & Mrs. Sears testified that they saw appellant burning something near his barn about two or three weeks before the body was found, and Mrs. Sears stated the rag or coat tied over the head of the deceased was similar in appearance to one worn by appellant about three years before. The sheriff and a man by the name of Harrison learned of the fire, searched appellant's premises, and discovered part of a suitcase and some burned letters behind appellant's house. The letters contained references to the children of the deceased. The ownership of a pistol was traced into the hands of a man by the name of Lee, who testified that it had been owned by him and his brother for a period of twelve months. The pistol at one time was owned by appellant but was sold by him about a year before McWhorter's body was found. Lee testified that appellant offered to buy the pistol from him in the early part of September, 1948, but that he would not sell it. He additionally testified that appellant told him to say nothing about the pistol. The Commonwealth admits that they could establish no motive whatever to prompt appellant to commit the crime. Commonwealth witnesses testified that appellant had been engaged in buying junk, scrap iron, and paper for several years. Appellant testified that he bought the suitcase and papers from McWhorter before the latter disappeared. That he found a social security card in the papers which he delivered to one of McWhorter's daughters, and at the time he delivered it to her, McWhorter was still living and had not disappeared. The daughter of the deceased was not introduced by the Commonwealth to contradict this testimony.

We fail to see any evidence pointing a suspicious finger to appellant on the charge of which he was convicted. The evidence discloses that McWhorter was

killed by a blow from a blunt instrument, and that he did not suffer a gunshot wound; but if he had been shot, the pistol introduced in evidence was shown by the Commonwealth to have been in the hands of other persons for a period of approximately twelve months before the body was found and five months thereafter. Failure of the Commonwealth to produce McWhorter's daughter to controvert appellant's statement concerning the social security card is extremely convincing of the truthfulness of his testimony in that regard. No one saw McWhorter in appellant's presence after August, 1947, eight months before the body was found, and there was an utter lack of suggestion in the evidence that appellant had any motive for committing the crime.

The Attorney General frankly admits that the case should be reversed because the Commonwealth failed to introduce sufficient evidence to submit the case to the jury or to sustain the verdict rendered. We are in accord with this view.

The judgment is reversed with directions that appellant be granted a new trial upon which, if the evidence is the same or is of no more legal efficacy, the trial judge will direct the jury to return a verdict of not guilty.